# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 17 2018, 9:18 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT
R.Y. (FATHER)

Harold E. Amstutz
Lafayette, Indiana

ATTORNEY FOR APPELLANT
S.L. (MOTHER)

Jennifer L. Schrontz
Schrontz Legal Group, LLC
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine A. Cornelius
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Involuntary Termination of the Parent-Child Relationship of B.W., J.W., C.Y., Ry.Y., J.Y. (Minor Children)

and

R.Y. (Father) and S.L. (Mother),

*Appellants-Respondents,*

v.

August 17, 2018

Court of Appeals Case No.
18A-JT-510

Appeal from the Tippecanoe Superior Court

The Honorable Faith A. Graham, Judge

Trial Court Cause Nos.
79D03-1708-JT-82
79D03-1708-JT-83
79D03-1708-JT-84
79D03-1708-JT-85
79D03-1708-JT-86

The Indiana Department of
Child Services,

*Appellee-Petitioner.*

**Bailey, Judge.**

# Case Summary

[1] S.L. ("Mother") and R.Y. ("Father") (collectively, "Parents") appeal the trial court judgment terminating their parental rights to C.Y., Ry.Y., and J.Y. In addition, Mother appeals the judgment terminating her parental rights to B.W. and J.W. They raise one issue on appeal which we restate as whether the trial court clearly erred when it terminated their parental rights.

[2] We affirm.

# Facts and Procedural History

[3] Mother and M.W.[1] are the parents of B.W., born April 27, 2005, and J.W., born September 26, 2006. Mother and Father are the parents of C.Y., born

---

[1] M.W. signed consents to adoption and does not participate in Mother's appeal.

September 4, 2010, Ry.Y., born May 12, 2012, and J.Y., born May 19, 2014. All five of the children were living with Mother and Father in subsidized housing on October 18, 2015, when the Tippecanoe County Department of Child Services ("DCS") received a report that Mother and Father were stealing items to support their heroin addictions and that B.W. and J.W. were not attending school. DCS's subsequent investigation confirmed the allegations, although Mother stated that she was home-schooling B.W. and J.W. Father admitted to stealing items to support a heroin addiction. Mother reported a diagnosis of Obsessive Compulsive Disorder, panic attacks, and anxiety which were treated with prescriptions for Xanax and Hydrocodone. Father reported that he was diagnosed with depression, which was untreated. Mother and Father both submitted to hair drug screens and, on October 30, 2015, those screens confirmed that Mother was positive for codeine, morphine, and heroin metabolite and that Father was positive for codeine, morphine, and heroin.

[4] Further investigation revealed that Mother had tested positive at the time of J.Y.'s birth—i.e., May 9, 2014—for benzodiazepines, opiates, and cannabinoids and that, in December 2014, DCS had not substantiated a report of substance use by Father despite his admission to using heroin two to three times per week for a couple of months. Mother had been arrested for theft in September, 2015, and Father was arrested for theft in October 2015, and was ultimately convicted of that crime.

[5] On November 5, 2015, DCS filed a petition alleging all five children were Children in Need of Services ("CHINS") because both parents were using

illegal opiates—which had led them to stealing items while their children were with them so that they could sell the items in order to buy drugs—and B.W. and J.W. were not attending school. Following a detention hearing, the trial court ordered on November 16 that the children be placed in protective custody and appointed a special advocate ("CASA") to represent the children's best interests. On December 14, 2015, the court found the children to be CHINS because:

> Mother and Stepfather/Father … are struggling with opiate addiction and at one point were both using heroin on a regular basis with their last use just one week prior. Neither parent has participated in any substance abuse counseling ….

Ex. Vol. I at 105. On January 15, 2016, the trial court issued a dispositional order under which the children were placed with Father's parents.

[6] Mother and Father were offered services, including substance use assessment and treatment, therapy, case management, random drug screens, and parenting time. Mother consistently tested positive for drugs from October 30, 2015, through April 12, 2016. However, between April and October 2016, Mother did not test positive for drugs, and she completed intensive outpatient treatment, including aftercare, beginning in July 2016. Father consistently tested positive for drugs from October 30, 2015 through May 31, 2016. However, from June through October 2016, Father did not test positive for drugs, and he completed recommended intensive outpatient treatment and concluded substance abuse services on September 21, 2016.

Because Mother and Father appeared to be making progress in addressing their substance abuse issues, DCS commenced a trial home visit for all of the children at Father's home, where Mother also resided, on October 3, 2016. However, the trial home visits were "disrupted" when both Mother and Father tested positive for heroin on January 26, 2017. Appealed Order at 3. Mother and Father then continued to test positive for drugs through the end of August 2017. Mother gave birth to another child ("C.") on January 9, 2017.[2]

The court held several permanency hearings at which the permanency plan remained reunification. However, at the third permanency hearing, held on July 10, 2017, the plan was changed to initiation of termination of parental rights and adoption. DCS filed termination petitions on August 8, 2017, and the court held an evidentiary hearing on those petitions on October 16, 2017. At the hearing, both DCS Family Case Manager ("FCM") Samantha Goltz Smith and CASA Leigh Ann Fricke testified that they believed termination of both parents' parental rights was in the children's best interests.

In an order dated January 19, 2018, the trial court granted the termination petitions and, in support, stated in relevant part:

FINDINGS OF FACT

* * *

---

[2] C. is not a subject of this termination action.

13. Both parents have extensive histories of substance abuse. Prior to the trial home visit, the parents were actively engaged in services, maintaining housing and employment, maintaining sobriety, and participating in increased parenting time. Neither parent was able to maintain progress and remain drug free.

14. At the onset of the CHINS case, Mother and Father had been residing together for approximately four (4) years in HUD housing. Mother and Father were evicted from HUD housing in August 2017 after HUD learned the children were not residing in the home. At that time, the rent was over $2000.00 delinquent. Mother relocated to Indianapolis for a period, temporarily resided with Maternal Grandfather, and then resided in Frankfort with Father at a friend's home before returning to Lafayette.

15. Father's last employment was March 2017 at Thyssen-Krupp where he worked for about four (4) to five (5) months at seventy (70) hours per week. At the time of the termination proceeding, Mother has [sic] resided with her brother on Kossuth Street for approximately one (1) week. Father was still residing with a friend in Frankfort. Both Mother and Father were unemployed.

l6. Mother completed intensive outpatient (IOP) treatment[,] including aftercare[,] beginning July 2016 at Bauer Family Services. Mother relapsed in January 2017 and was admitted to inpatient treatment. Mother returned to IOP on February 24, 2017[,] and demonstrated progress. Mother successfully completed IOP treatment on May 12, 2017. Mother's discharge plan involved continued individual therapy and medication management as well as buprenorphine treatment. Mother participated in a buprenorphine treatment program which included therapy from June 2017 until August 7, 2017. Mother failed to re-engage in substance abuse treatment after subsequently relapsing again. Mother also failed to utilize recommended vivitrol shots.

17.  During the CHINS proceedings, Mother tested positive for the presence of drugs on October 30, 2015[,] (alprazolam/codeine/hydromoprhone/morphine/heroin), November 9, 2015[,] (methadone/morphine/cocaine/heroin/fentanyl), November 30, 2015[,] (morphine/hydrocodone/heroin), December 15, 2015[,] (morphine/heroin), December 18, 2015[,] (morphine/heroin), January 4, 2016[,] (morphine), January 22, 2016[,] (buprenorphine), January 27, 2016[,] (alprazolam/buprenorphine), February 2, 2016[,] (alprazolam/buprenorphine), February 10, 2016[,] (alprazolam/buprenorphine), February 11, 2016[,] (alprazolam), February 29, 2016[,] (alprazolam), March 4, 2016[,] (alprazolam), March 7, 2016[,] (alprazolam), March 10, 2016[,] (alprazolam), March 15, 2016[,] (alprazolam), March 16, 2016[,] (alprazolam), April 8, 2016[,] (alprazolam), April 12, 2016[,] (EtG/alprazolam), January 26, 2017[,] (morphine/heroin), February 13, 2017[,] (buprenorphine), February 16, 2017[,] (buprenorphine/tramdone), February 20, 2017[,] (buprenorphine), February 22, 2017[,] (buprenorphine), March 1, 2017[,] (buprenorphine), April 20, 2017[,] (morphine/heroin), April 26, 2017[,] (morphine/heroin), August 10, 2017[,] (morphine/heroin), and August 17, 2017[,] (morphine/heroin/fentanyl).  Mother's last collected drug screen was at the end of August.  Mother failed to submit to multiple drug screens as requested.  Mother admits using illegal drugs as recently as three (3) weeks prior to the termination proceeding.

18.  Father has struggled with an opioid addiction for the past eighteen (18) years.  Father completed a substance abuse evaluation and treatment at Wabash Valley Alliance.  Father completed recommended intensive outpatient (IOP) treatment.  Following IOP, Father attended a few individual sessions and concluded substance abuse services on September 21, 2016.  Father commenced additional intensive outpatient (IOP) treatment beginning April 2017 at Bauer Family Services.  Father

was unsuccessfully discharged on September 8, 2017[,] due to lack of attendance at group therapy. Father otherwise failed to continue substance abuse treatment. Father failed to participate in recommended therapy to address mental health issues. Father was unsuccessfully discharged from case management services.

19. During the CHINS proceedings, Father tested positive for the presence of drugs on October 30, 2015[,] (alprazolam/codeine/hydromorphone/morphine/heroin), November 9, 2015[,] (methadone/morphine/heroin/cocaine/fentanyl), November 30, 2015[,] (morphine/heroin), December 11, 2015[,] (morphine/heroin), December 15, 2015[,] (morphine/heroin), January 22, 2016[,] (alprazolam), May 31, 2016[,] (morphine/heroin), January 26, 2017[,] (morphine/heroin), January 27, 2017[,] (morphine/heroin), February 1, 2017[,] (morphine/heroin), February 8, 2017[,] (morphine/heroin), February 22, 2017[,] (buprenorphine), March 3, 2017[,] (morphine/heroin), March 6, 2017[,] (morphine/heroin), March 7, 2017[,] (morphine/heroin), March 24, 2017[,] (methadone), March 29, 2017[,] (methadone/morphine/heroin), April 11, 2017[,] (alcohol/morphine/heroin), April 19, 2017[,] (alcohol/morphine/heroin), August 10, 2017[,] (morphine/heroin), August 14, 2017[,] (morphine/heroin), August 17, 2017[,] (morphine/heroin/fentanyl), August 18, 2017[,] (morphine/heroin/fentanyl), August 22, 2017[,] (buprenorphine/fentanyl), and August 27, 2017[,] (buprenorphine/heroin/fentanyl). Father failed to submit to multiple drug screens as requested. Father admits last using heroin approximately one (1) week prior to the termination proceeding.

20. Mother failed to appear for hearings on February 8, 2017, August 30, 2017, [and] September 25, 2017. [Father] failed to appear for hearing[s] on August 30, 2017 [and] September 25, 2017. Mother and [Father] ceased contact with DCS after

August 22, 2017. The Court suspended parenting time for Mother and [Father] by order issued September 26, 2017.

21. Prior to the trial home visit, Mother's interactions with the children were appropriate during parenting time. Mother was prepared for parenting time. The children were bonded with Mother. However, Mother attended only three (3) of six (6) scheduled visits after the trial home visit disrupted. Mother was unsuccessfully discharged from the service provider for lack of compliance. Thereafter, Mother's visits were suspended by court order after Mother tested positive for heroin and fentanyl.

22. After the trial home visit disrupted, Father only attended parenting time for less than three (3) weeks, a total of six (6) scheduled visits. Although Father's interactions with the children were generally appropriate at those visits, he nodded off several times even while holding [C.]. The referral required that both parents attend all visits. Therefore, Father was unsuccessfully discharged due to Mother's lack of attendance. Father never engaged in any further parenting time. Both Mother and Father last saw the children in August 2017.

23. CASA Staff Advocate, Leigh Ann Fricke, supports termination of parental rights in the best interests of the children. CASA noted the parents made progress achieving a trial home visit before relapsing in January 2017. The parents have since failed to demonstrate any further efforts toward reunification. Substance abuse by the parents has worsened. [B.W.] and [J.W.] are placed with Maternal Grandparents. [C.Y.] and [Ry.Y.] are placed together in a foster home. [J.Y.] is placed in a foster home with [C.]. The children are all currently doing well in placement. A concurrent foster home has been identified for adoption of [C.Y.], [Ry.Y.], [J.Y.] (and potentially [C.]) as a sibling group. The children have no special needs and are adoptable even if the current or prospective placement(s) are

unable to adopt for any reason. The children need the stability that a permanent decision can provide.

24. The parents have failed to maintain contact with DCS since August 2017. The stability of the parents has deteriorated since the cessation of the trial home visit. Father admits he is currently not financially able to provide for the children. The parents lack stable, independent housing and are unemployed. Both parents continue active drug use[,] most recently testing positive for fentanyl which can be transferred to the children by skin to skin contact.

CONCLUSIONS OF LAW

1. There is a reasonable probability the conditions that resulted in removal of the children from the care of the parents or the reasons for continued placement outside the home will not be remedied. Neither Mother nor Father has demonstrated the ability or willingness to make lasting changes from past behaviors. There is no reasonable probability that either Mother or Father will be able to maintain sobriety and stability to care and provide adequately for the children.

2. Continuation of the parent-child relationships poses a threat to the well-being of the children. The children need stability in life. The children need parents with whom the children can form a permanent and lasting bond to provide for the children's emotional and psychological as well as physical well-being. The children's well-being would be threatened by keeping the children in parent-child relationships with Mother or Father whose own choices and actions have made them unable to meet the needs of the children.

3. DCS has a satisfactory plan of adoption for the care and treatment of the children following termination of parental rights.

The children can be adopted and there is reason to believe an appropriate permanent home has or can be found for the children with relatives and/or as sibling groups.

4. For the foregoing reasons, it is in the best interests of [B.W.], [J.W.], [C.Y.], [Ry.Y.], and [J.Y.] that the parental rights of [Mother] be terminated [and] it is in the best interests of C.Y., Ry.Y., and J.Y. that the parental rights of Father be terminated.[3]

Appealed Order at 3-6. Mother and Father now appeal.

# Discussion and Decision

## Standard of Review

[10] Parents maintain that the trial court's order terminating their parental rights was clearly erroneous. We begin our review of this issue by acknowledging that "[t]he traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *Bailey v. Tippecanoe Div. of Family & Children (In re M.B.)*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*. However, a trial court must subordinate the interests of the parents to those of the child when evaluating the circumstances surrounding a termination. *Schultz v. Porter Cty. Office of Family & Children (In re K.S.)*, 750 N.E.2d 832, 837 (Ind. Ct. App. 2001). Termination of a parent-child relationship is proper where a child's emotional and physical development is

---

[3] The trial court issued separate orders for Mother and Father, but the quoted language is the same in each order aside from the wording in Conclusion of Law number four, as indicated.

threatened. *Id.* Although the right to raise one's own child should not be terminated solely because there is a better home available for the child, parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. *Id.* at 836.

[11] Before an involuntary termination of parental rights can occur in Indiana, DCS is required to allege and prove, among other things:

> (A) that one (1) of the following is true:

> \* \* \*

>> (iii) The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

> (B) that one (1) of the following is true:

>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

>> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services.

* * *

> (C) [and] that termination is in the best interests of the child . . . .

Ind. Code § 31-35-2-4(b)(2). DCS need establish only one of the requirements of subsection (b)(2)(B) before the trial court may terminate parental rights. *Id.* DCS's "burden of proof in termination of parental rights cases is one of 'clear and convincing evidence.'" *R.Y. v. Ind. Dep't of Child Servs. (In re G.Y.)*, 904 N.E.2d 1257, 1260-61 (Ind. 2009) (quoting I.C. § 31-37-14-2).

[12] When reviewing a termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. *Peterson v. Marion Cty. Office of Family & Children (In re D.D.)*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. Instead, we consider only the evidence and reasonable inferences that are most favorable to the judgment. *Id.* Moreover, in deference to the trial court's unique position to assess the evidence, we will set aside the court's judgment terminating a parent-child relationship only if it is clearly erroneous. *Judy S. v. Noble Cty. Office of Family & Children (In re L.S.)*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999). *trans. denied*.

[13] Here, in terminating Parents' parental rights, the trial court entered specific findings of fact and conclusions thereon. When a trial court's judgment contains special findings and conclusions, we apply a two-tiered standard of review. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). First, we determine whether the evidence supports the findings and,

second, we determine whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the trial court's decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208.

[14] Parents do not specifically challenge any of the trial court's relevant findings of fact.[4] Rather, they contend that the trial court erred in its conclusions of law. Specifically, they allege that the trial court erred in concluding that they will not remedy the conditions that resulted in the children's removal and that the continuation of the parent-child relationship poses a threat to the well-being of the children. They also challenge the trial court's finding that termination is in the best interests of the children. Because Indiana Code Section 31-35-2-4(b)(2)(B) is written in the disjunctive, we only address whether the trial court erred in concluding that Parents will not remedy the conditions that resulted in the children's removal and that termination is in the children's best interest. We also address Mother's contention that DCS failed to present a satisfactory permanency plan for the children.

---

[4] Father does contend that finding number eighteen (18) is incorrect because it states that he has struggled with an opioid addiction for eighteen (18) years when his testimony was actually that he has had such an addiction for eight to ten years. Tr. at 52. However, even if the trial court had incorrectly based its decision on that incorrect finding, that would not prove fatal as there existed many other valid findings to support the trial court's conclusions, as we discuss below. *Cf. Faver v. Marion Cty. Office of Family & Children (In re A.F.)*, 762 N.E.2d 1244, 1251 (Ind. Ct. App. 2002) (finding no fatal error in contradictory findings where there were "at least some" valid findings to support the trial court's conclusion), *trans. denied*.

# Conditions that Resulted in Children's Removal

[15]     Parents maintain that the trial court erred in finding a reasonable probability that the conditions that resulted in the children's removal will not be remedied. In support, they point to evidence of their compliance with some of the court's requirements, such as attending drug treatment and passing drug screens for a period of approximately eight months. However, their arguments on appeal are simply requests that we reweigh the evidence, which we will not do. *See In re D.D.*, 804 N.E.2d at 265. Instead, we must determine whether the evidence most favorable to the judgment supports the trial court's conclusion. *Id.*; *Quillen*, 671 N.E.2d at 102.

[16]     In determining whether the evidence supports the trial court's finding that Parents were unlikely to remedy the reasons for removal, we engage in a two-step analysis. *E.M. v. Ind. Dep't of Child Servs.* (*In re E.M.*), 4 N.E.3d 636, 643 (Ind. 2014). "First, we identify the conditions that led to removal; and second, we determine whether there is a reasonable probability that those conditions will not be remedied." *Id.* (quotations and citations omitted). In the second step, the trial court must judge a parent's fitness to care for his or her children at the time of the termination hearing, taking into consideration evidence of changed conditions. *Id.* However, the court must also "evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child." *Moore v. Jasper Cty. Dep't of Child Servs.*, 894 N.E.2d 218, 226 (Ind. Ct. App. 2008) (quotations and citations omitted). Pursuant to this rule, courts have properly considered evidence of a parent's prior criminal

history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate housing and employment. *Id.* Moreover, DCS is not required to rule out all possibilities of change; rather, it need establish only that there is a reasonable probability the parent's behavior will not change. *Id.*

[17] Parents do not dispute that the children were initially removed from their care due to their drug use. And it is also undisputed that both parents tested positive for illegal drugs over the two-year period of the CHINS proceedings, with only a temporary break of non-drug use during the period from approximately June of 2016[5] until January of 2017. Both parents had a history of drug use and relapses and related criminal charges, and both parents consistently tested positive for illegal drug use for the approximately eight months prior to the termination hearing. And, within a few weeks of the termination hearing, both parents had tested positive for illegal drugs, including fentanyl, which can be transferred to the children by skin to skin contact. Moreover, Parents stopped cooperating with—or even contacting—DCS altogether after August 22, 2017. Given Parents' habitual and continuing patterns of drug use and their failure to continue cooperation with DCS,[6] we cannot say that the trial court erred in

[5] Mother tested positive for drugs on April 12, 2016, and Father tested positive for drugs on May 31, 2016. Both then tested positive again in January of 2017. Thus, their claims that they were drug-free for "one year" are not supported by the evidence. *See* Mother's Br. at 18; Father's Br. at 11.

[6] Parents blame DCS for the loss of their subsidized housing and Father's job. However, even if Parents had housing and employment at the time of the termination hearing, the evidence would still support the termination due to their on-going drug use and cessation of cooperation with DCS.

concluding that the conditions at the time of the children's removal were not, and likely will not be, remedied.

[18] Father contends that DCS should have given Parents additional time in which to overcome their opioid addictions, given the current nation-wide opioid crisis and the nature of an opioid addiction. However, our legislature has determined that parents need only be given a period of twenty-two months in which to remedy the reasons for the children's removal. I.C. § 31-35-2-4(b)(2)(A)(iii) (providing a statutory basis for TPR where the children had been removed from the parents for at least fifteen of the most recent twenty-two months). Father's policy argument that persons addicted to opioids should be given more time to overcome their addictions must be directed to the legislature, not the courts. *See, e.g.*, *Briggs v. Griffin Wheel Corp.*, 851 N.E.2d 1261, 1263 (Ind. Ct. App. 2006) (citing *Allied Signal, Inc. v. Ott*, 785 N.E.2d 1068, 1071 (Ind. 2003)) (noting that an unambiguous statutes' plain and obvious meaning may not be enlarged or restricted by the courts).

## Best Interests

[19] In determining whether termination of parental rights is in the best interests of a child, the trial court is required to look at the totality of the evidence. *A.S. v. Ind. Dep't of Child Servs.* (*In re A.K.*), 924 N.E.2d 212, 224 (Ind. Ct. App. 2010). "A parent's historical inability to provide adequate housing, stability and supervision coupled with a current inability to provide the same will support a finding that termination of the parent-child relationship is in the child's best

interests." *Castro v. State Office of Family & Children*, 842 N.E.2d 367, 374 (Ind. Ct. App. 2006), *trans. denied*. "Additionally, a child's need for permanency is an important consideration in determining the best interests of a child, and the testimony of the service providers may support a finding that termination is in the child's best interests." *In re A.K.*, 924 N.E.2d at 224. Such evidence, "in addition to evidence that the conditions resulting in removal will not be remedied, is sufficient to show by clear and convincing evidence that termination is in the child's best interests." *L.S. v. Ind. Dep't of Child Servs.* (*In re A.D.S.*), 987 N.E.2d 1150, 1158-59 (Ind. Ct. App. 2013), *trans. denied*.

[20] Again, Parents' contentions on this issue amount to requests that we reweigh the evidence, which we will not do. The evidence most favorable to the judgment shows that, despite entering drug treatment and maintaining approximately eight months of sobriety, Parents continued to use drugs even just a few weeks prior to the termination hearing. Parents had also ceased any cooperation or even contact with DCS at the time of the hearing. And both the FCM and the CASA testified that they believed termination of both parents' parental rights was in the children's best interests. Given that testimony, in addition to evidence that the children need permanency and stability that Parents cannot provide and that the reasons for the children's removal from Parents will not likely be remedied, we hold that the totality of the evidence supports the trial court's conclusion that termination is in the children's best interests. The trial court did not err when it terminated Parents' parental rights to the children.

# Satisfactory Plan

[21] Mother maintains that DCS failed to show that it had a satisfactory permanency plan for the children. We disagree. A permanency plan "need not be detailed, so long as it offers a general sense of the direction in which the child will be going after the parent-child relationship is terminated." *In re D.D.*, 804 N.E.2d at 268 (citing *Jones v. Gibson Cty. Div. of Family & Children* (*In re B.D.J.*), 728 N.E.2d 195, 204 (Ind. Ct. App. 2000)). DCS presented a plan for adoption of the children, including potential placement of the children with their siblings. Adoption is a satisfactory plan for permanency. *K.W. v. Ind. Dep't of Child Servs.* (*In re A.S.*), 17 N.E.3d 994, 1007 (Ind. Ct. App. 2014), *trans. denied*. The trial court did not err in holding that DCS had a satisfactory plan for the children's permanent placement. To the extent Mother argues that DCS and/or the trial court were required to consider permanency plan alternatives to adoption, she is mistaken. *See M.M. v. Ind. Dep't of Child Servs.* (*In re B.M.*), 913 N.E.2d 1283, 1287 (Ind. Ct. App. 2009) (rejecting argument that juvenile court was required to consider placing child with a relative as an alternative to termination of parental rights).

[22] Affirmed.

Mathias, J., and Bradford, J., concur.